Johnson, J.
It is conceded that the statute of limitations will not bar a legacy, and such clearly is the general rule. But it appears from the evidence that the legacy claimed by the plaintiffs under the will of their grandfather, William H. Wigg, was paid by his executor to their father, John B. Barnwell, as long ago as 1199, and it is insisted that this was professedly intended as a payment of the legacy, and an execution of the trust imposed by law, and that therefore the statute would begin to run from that time. The eases of Starke & Starke, published in the Carolina Law Journal, p. 510, and Moore v. The Administrator of Poreher, decided at this place, I think at February Term, 1830, are relied on in support of this position. The principle is certainly a correct one, that when an executor or other person, acting in a fiduciary character, does an act importing a termination of the confidence or trust, as a final settlement and account with the legatee or cestui que trust, he will be protected by the statute against a subsequent account, unless he has been guilty of fraud, and even then the statute will run from the discovery of the fraud. But this case does not fall within that rule. The trust re *182 posed in the executor was that he would pay the legacy to the plaintiffs, or, being minors, to some one who might be duly authorized to receive. In law, the father was not, as a general rule, entitled to receive it, and the payment to him can no more be regarded as a fulfilment and *9331 termination of the trust, than if he had paid it to a stranger. J On the contrary it was in direct violation of it. The rule supposes that the legatee or cestui que trust has at least notice that the executor or trustee regards himself as having been discharged of the trust, and maintains that they are bound to insist on their rights within the period limited by the statute, but it cannot be supposed that they would be bound by an account with, or notice to a stranger.
Ño case has been cited at the bar to show that the payment of a legacy will be presumed after a lapse of twenty years, nor does my memory supply me with any particular case in which it has been ruled; yet the impression on my mind that the precise point has been ruled is so strong, that I can hardly be mistaken, and I think that upon referring to the unreported cases, añore than one of the sort will be found. However that may be, the universal tendency of our own decisions has been to cut down the time necessary to the legal presumption of facts from that established in the English Courts. The difference in the time necessary to bar an ejectment in England and in this State, as well as personal actions, laid the foundation for this diversity of rule, and has been made the foundation of a new rule. On this principle it was held in M’Elwee v. Hill, 2 Cons. Rep. 130, that a possession of twenty years was sufficient to authorize the presumption of a grant to land, thirty years being required according to the English rule; and still more strikingly analogous is the case of Wright v. Wright, 2 M’C. Ch. Rep. 197, where upon a bill filed against an executor for an account, it appeared that sixteen years before the executor had rendered an ex parte account to the ordinary, the accounts appearing regular, it was held that this was a protectection against a further accounting. There is perhaps no case in which such a protection is more necessary than in the cases of executors and administrators. Their duty is not limited to a particular transaction, which, from its magnitude and importance, would point out the propriety of preserving the evidence of it, but of those various, minute, and complicated details, each being of itself comparatively unimportant, and therefore the more likely to be neglected. Twenty years gives abundant time to settle the affairs of the most deranged and complicated estate, and the restless and migratory habits of our people, by which means proof per testes is every day rendered more difficult of attainment, is, I think, *93-4.1 abundant reason for ^cutting down the time to as short a time as -* may be consistent with sound policy. I lake it therefore that twenty years is per se sufficient to authorize the presumption of the payment of a legacy. Starkie, in his Treatise on Evidence, p. 1235-6, says, that this presumption is founded on an artificial rule, by which we arrive at a conclusion without the process of reasoning, and supplies the place of proof. There is also a natural presumption arising from lapse of time independently of the -artificial rule, and although it does not necessarily lead to a conclusion, yet in weighing other circumstances, it enters largely into the account. “ It is hard to prove old things, and therefore *183 less proof will be required.” Our confidence in history, and even Revelation, is in some degree built on this foundation.
About thirty-five years had elapsed between the death 'of the testator and the filing of the bill; and although the presumption of payment, of the legacy to the plaintiffs during their minority, would not arise on account of their incompetency to receive, yet it does not follow that there was not some one duly authorized to receive it for them, and it may be well conceded that this length of time would greatly increase the difficulty of furnishing strict proof. More than twenty years had elapsed between the period at which some of the plaintiffs attained full age, and the filing of the bill, and with respect to them the legal presumption must operate. The legacy, although of a gross sum, was equally distributable amongst them, each was entitled to receive his own dividend on his attaining his majority, and the non-payment of one would not authorize the presumption that the other was not paid. Cuthbert Barnwell, the youngest of the plaintiffs, attained full age about nineteen years before the filing of the bill, and although in his case the artificial rule will not operate, yet considering the great length of time since the death of the testator, his neglect to prosecute his claim on his attaining full age, and taking it in connection with the circumstances summed up by the Chancellor, well warrants the conclusion at which he has arrived. More than the third of a century had elapsed, all the other concerns of the estate of the testator had been finally settled, the executor was dead, and his estate fully administered and disposed of accordingly," and plenary proof was not to be expected. The payment of the legacy to the plaintiffs’ father by the executor, in IT99, is relied on as repelling the presumption of payment to the plaintiffs: but if there is anything* in it, it leads to a directly opposite conclusion. Men do not ordinarily L d0 and voluntaiily incur the responsibility of paying money on the one hand, or receiving it on the other, without authority; and in this case we have but to call in the aid of the legal presumption, to arrive at the conclusion that the father was legally authorized to receive the legacy. Again, let it be conceded that the payment was without the authority of law: — It was then a trust reposed by the executor in the father, to administer it for the benefit of the plaintiffs. Who was so much interested or so likely to employ it in the way best calculated to promote their interest ? It is a slander on parents to suppose that they are indifferent to, or careless of, the interest of their children. Some are, but they are exceptions to the general rule. Is there not, then, independent of a legal presumption, much reason to believe that the father has discharged this trust faithfully, and that if he were now living, he would be able to show it satisfactorily ? I have not adverted to the fact stated in the Circuit Court decree, that the plaintiffs have derived a considerable estate from their father, because I understand that it was made on a concession by the counsel on the trial below which he has since ascertained was not warranted by the fact. If that was so, the plaintiffs would be unquestionably liable to account to the defendant for the legacy received by their father, upon precisely the same principle that they seek to charge him; but from the view before taken that matter has become unimportant.
Motion dismissed, and the decree of the Circuit Court is affirmed.
O’Neall, J., and Harper, J., concurred.